AUSTIN JAMES (58422031)
Chief Legal Counsel
Secretary of State's Office
Special Attorney General
P.O. Box 202801
Helena, MT 59620-2801
406-444-2034
Austin.James@mt.gov

*COUNSEL FOR DEFENDANT*

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| DONALD J. TRUMP FOR PRESIDENT, INC., REPUBLICAN NATIONAL COMMITTEE; NATIONAL REPUBLICAN SENATORIAL COMMITTEE; MONTANA REPUBLICAN STATE CENTRAL COMMITTEE,<br>    Plaintiffs,<br><br>And<br><br>GREG HERTZ, in his official capacity as Speaker of the Montana House of Representatives; SCOTT SALES, in his official capacity as President of the Montana Senate, on behalf of the Majorities of the Montana House of Representatives and the Montana Senate,<br><br>    Intervenor-Plaintiffs,<br><br>vs.<br><br>STEPHEN BULLOCK, in his official capacity as Governor of Montana; COREY | CV 20–66–H–DLC<br><br>(Consolidated with Case No. CV-20-67-H-DLC)<br><br><br><br>DEFENDANT SECRETARY OF STATE'S RESPONSE TO PLAINTIFFS MOTION FOR PRELIMINARY INJUNCTION |

| | |
|---|---|
| STAPLETON, in his official capacity as Secretary of State of Montana,<br><br>    Defendants,<br><br>DSCC, DCCC, and MONTANA DEMOCRATIC PARTY,<br><br>    Intervenor-Defendants. | |

Defendant COREY STAPLETON, in his official capacity as MONTANA SECRETARY OF STATE, through the undersigned attorney, hereby responds to Plaintiffs' Motion for Temporary Restraining Order as follows:

## INTRODUCTION

In Montana, the Secretary of State is the Chief Elections Officer, but the Governor is the Chief Executive Officer. The Governor is vested with emergency powers in his role as Chief Executive Officer. Plaintiffs contest the Governor's exercise of emergency powers related to the 2020 General Election. Unless and until the judiciary declares otherwise, the Governor's Elections Directive issued in response to the COVID-19 pandemic is the law of the land for the upcoming election—in conjunction with the legislature's declarations in Title 13, MCA.

The Secretary took an oath to the citizens of Montana to carry out, uphold, and administer the laws of Montana. One of which, in the role as Chief Elections Officer, is to maintain uniformity in electoral process. As local governments made decisions pursuant to the Governor's Directive, the Secretary maintained

consistency in his role pursuant to the Directive and Title 13. The Secretary fulfilled the duty of his office.

Plaintiffs suggest the Secretary has improperly carried out administration of the 2020 general election under the Governor's "unconstitutional" Directive and continues to do so. It is not the role of the Secretary to serve as a tribunal regarding the Governor's Directive. In fact, it would be improper for the Secretary to do so. The Secretary's focus is administering the 2020 election with integrity and fairness. To do so, the Secretary must carry out the duties of the Chief Elections Officer under the active Directive in place.

## ARGUMENT

The Secretary need not address Plaintiffs' arguments related to the Governor, the Governor's powers, or the constitutionality of them. The Secretary will address the claims related to the status of electors with undeliverable ballots, relying upon a misinterpreted email sent by the Secretary's Election and Voter Services Division in April, 2020.

### I. The Secretary's Undeliverable Ballot Instructions

Plaintiffs interpret an informational email by the Secretary as a mandate to Election Administrators to defy statutory duties. Doc. 9, P. 6; Doc. 9 Exhibit 35. The Secretary seeks to clarify the misinterpreted email. The email was a routine, general informational email—not an Election Directive.

### A. The Statutory Duties of An Election Administrator Regarding Undeliverable Ballots

Title 13, Chapter 19, MCA governs Mail Ballot Elections in Montana. The applicable statute and process for when a mail ballot is returned as undeliverable is set forth by § 13-19-313. The elector associated with an undeliverable ballot, upon notice, is first given an opportunity to resolve questions pertaining to his or her correct mailing address. § 13-19-313 (1); *See also*, § 13-13-245 (4).[1]

If a confirmation notice is returned to the election administrator as undeliverable, the election administrator has a mandatory duty to place the elector on the inactive list under the process provided in § 13-2-220. Mont. Code Ann. § 13-19-313 (2) ("If the confirmation notice is returned…the election administrator *shall* place the elector on the inactive list provided for in 13-2-220 until the elector becomes a qualified elector.")(Emphasis added).

Subpart four of the statutory procedure precludes Election Administrators from placing an elector on inactive status within 90 days of a federal election. Specifically, § 13-2-220 (4) provides:

> A procedure used by an election administrator pursuant to this section must be completed at least 90 days before a primary or general election for federal office.

---

[1] The elector is entitled to the elector's undeliverable ballot upon the elector's notification of the elector's correct mailing address. § 13-13-245 (4)(b)(i). The elector may also request a replacement ballot pursuant to 13-13-204.

*Secretary of State's Response to Plaintiffs' Preliminary Injunction Motion*

Plaintiffs' Exhibit 35, the Secretary's April 29, 2020, informational email, was distributed to Election Administrators within 90 days of the 2020 primary election. The email states that electors with an undeliverable ballot should not be placed on the inactive list "*upon receipt* of a returned undeliverable ballot" to the election administrator. (emphasis added). Rather, upon receipt of an undeliverable ballot, the email advises election administrators to mark the status as undeliverable on the statewide voting system and attempt to contact the elector.

As suggested by the email, included as Plaintiff's Exhibit 35, and provided by statute, upon the return of an undeliverable ballot, an Election Administrator is to verify correctness of the mailing address, contact the voter, or send out a confirmation notice. All the above is in the plain language of statute.

Plaintiffs' interpretation makes it seem as if the Secretary advised counties that electors with undeliverable ballots should *never* be placed on the inactive list. Such an interpretation would defy the mandatory duty to complete the process of placing undeliverable ballot electors on the inactive list at least 90 days before a primary or general election. The process requires more than simply placing an elector on the inactive list upon receipt of an undeliverable ballot.

The email specifically notes the 90-day window as the reason for advising election administrators against placing an elector on the inactive list upon receipt of an undeliverable ballot.

The general information provided by the Secretary's email contained attached document with applicable statutory provisions pertaining to this process. The attachment to the email was not provided by Plaintiffs along with the exhibit. The attachment to the email references applicable statutes concerning the procedure applicable to the status and/or changes to the status of a voter outside of the period within 90 days of a primary or general election for federal office.

However, the general information provided in the email body itself does not address placement of undeliverable voters from the primary election on the inactive list for the general election[2], nor was it intended to. Simply put, Plaintiffs' assertion that "the Secretary instructed counties never to place voters to the inactive list if their primary ballot was returned undeliverable" is false.

The Secretary, in performing his statutory duties, provided general information to county election administrators regarding their statutory duties. County election administrators have a duty to place undeliverable electors on the inactive list under the process and procedure provided by statute.

The email provided as an exhibit was not a Directive contradicting statute. The email was general information for Election Administrators to follow statute

---

[2] Statute requires completion of this process prior to 90 days before the General election. *See,* Mont. Code Ann. § 13-2-220 (4).

and must be interpreted in context. Interpreted in context, the email does not support the assertion made by Plaintiffs.

### B. Election Administrators Are Generally Familiar With The Process

For the most part, County Election Administrators are familiar with the process and procedure applicable to undeliverable ballots. County election administrators regularly conduct Chapter 19 elections for school, irrigation district, and other municipal elections. As such, County Election Administrators are familiar with the process of handling undeliverable ballots, sending confirmation notices to returned undeliverable ballots for electors, and the process to change an elector's status to inactive associated with a Chapter 19 election.

With one exception, the Chapter 19 elections regularly administered by county election administrators generally do not fall within 90 days of a federal primary or general election. As a result, it was especially important to raise awareness for County Election administrators regarding § 13-2-220 (4) in the performance of their § 13-19-313 duties, including the application of § 13-2-220 specified by § 13-19-313 (2).

The Secretary responded to a few isolated requests by select County Election Administrators for assistance and/or clarification regarding their mandatory duties; including distributing confirmation notices to electors and placing electors on the inactive list provided for in §13-2-220, per § 13-19-313.

Once the 90-day windows no longer applied, county election administrators were to complete the familiar process regarding undeliverable addresses for a Chapter 19 election. *See Generally,* Doc. 81, *DEC. AUDREY JEAN MCCUE.* A process regularly performed at a smaller scale. Due to their familiarity with the process, the Secretary was unsurprised by the relatively non-existent need for further assistance by County Election Administrators to fulfill their duties.

## Conclusion

The Secretary provided Election Administrators with general information based upon statutory requirements concerning undeliverable ballots, and the statutes themselves. The Secretary did not issue a Directive contravening statute. Nothing in the Governor's Directive, or the Secretary's informational email, implied any alteration of the statutory requirements by county election administrators concerning undeliverable ballots and placing electors on inactive status.

DATED this 17 day of September, 2020.

By: /s/ Austin Markus James

Austin M. James
Special Assistant Attorney General
Chief Legal Counsel-Secretary of State
Attorney for Defendant/Appellant

## CERTIFICATE OF COMPLIANCE PURSUANT TO L. R. 7.1(d)(2)(E)

I hereby certify that this document, excluding caption, tables and certificate of compliance, contains 1386 words, as determined by the word processing software used to prepare this document, specifically Microsoft Word. I further certify that this document is printed with proportionally spaced typeface of 14 points, double-spaced.

DATED: September 17, 2020

                              Respectfully submitted,
                                                  /s/ Austin Markus James
                                                        Austin Markus James
                                                  Attorney for Defendant

## CERTIFICATE OF SERVICE

I certify that on this 17 day of September, 2020, a true and correct copy of the foregoing was electronically served upon the following:

By:   /s/ Austin Markus James