Emily Jones
  emily@joneslawmt.com
JONES LAW FIRM
2101 Broadwater Ave.
P.O. Box 22537
Billings, MT 59104
Telephone: 406/384-7990
*Local Counsel for Plaintiffs*

James Bopp, Jr. (IN #2838-84), jboppjr@aol.com*
Richard E. Coleson (IN #11527-70), rcoleson@bopplaw.com*
Courtney Turner Milbank (IN #32178-29), cmilbank@bopplaw.com*
Angela Stuedemann (IA #69956), astuedemann@bopplaw.com*
True the Vote, Inc., Voters' Rights Initiative
THE BOPP LAW FIRM, PC
1 South Sixth St.
Terre Haute, IN 47807-3510
Telephone: 812/232-2434
*Admitted pro hac vice
*Lead Counsel for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| **Donald J. Trump for President, Inc.** et al.,  Plaintiffs,   and  **Greg Hertz** et al., Intervenor-Plaintiffs,   v.  **Stephen Bullock** et al., Defendants,   and  **DSCC** et al., Intervenor-Defendants;   consolidated with  **Joe Lamm** et al., Plaintiffs,   v.  **Stephen Bullock** et al., Defendants. | Case No.: 6:20-cv-00066-DLC  (Consolidated with Case No. 6:20-cv-00067-DLC)  **Reply Memorandum of Plaintiffs Lamm et al. in Support of Their Preliminary-Injunction Motion** |

# Table of Contents

Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Standing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    I.   Voters succeed on the merits. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
          A.  The Plan violates the Elections Clause. . . . . . . . . . . . . . . . . . . . . . . . 5
          B.  The Plan violates the right to vote by imposing the substantial risk of *vote-dilution* disenfranchisement the legislative balancing rejected. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
          C.  The Plan violates the right to vote by imposing the substantial risk of *direct* disenfranchisement the legislative balancing rejected. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
          D.  The Plan violates the right to vote and equal protection by empowering voters in some counties over others . . . . . . . . . . . . . . . . . 9
    II.  Equitable considerations don't preclude requested relief. . . . . . . . . . . . 10

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Certificate of Compliance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Certificate of Service . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

# Table of Authorities

*Cases*

*Burdick v. Takushi*, 504 U.S. 428 (1992) .............................. 1, 7-8

*Bush v. Gore*, 531 U.S. 98 (2000) ................................. 4, 5, 9, 12

*Bush v. Palm Beach County Canvassing Board*, 531 U.S. 70 (2000) ........... 5

*Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181 (2008) ............... 3-4

*Purcell v. Gonzalez*, 549 U.S. 1 (2006) ................................. 10

*Constitutions, Statutes, and Rules*

42 U.S.C. § 1983 ....................................................... 6

Article I, § 4 , cl. 1 ............................................... 3-6, 12

U.S. Const. amend. I, Free Speech Clause ............................... 12

U.S. Const. amend. XIV, Equal Protection Clause .................... 3, 9, 12

# Introduction[1]

As established below, Defendants Bullock and Stapleton *ignore* Voters' unique, key arguments[2]—including the controlling legislative balancing and Defendants' total failure of justification and tailoring under *Burdick v. Takushi*, 504 U.S. 428 (1992) (Mem. 15-21)—so they fail to refute them. As this Court consolidated the preliminary-injunction hearing and merits trial, ECF No. 69, Voters address merits success and related matters, not other preliminary-injunction elements.

# Facts

Voters established that existing Montana law complies with the Governor's Phase 2 reopening rules and absentee ballots are available without excuse (making the Plan unjustified) and that mailed ballots pose a greater fraud risk as a matter of law, which are crucial to the analysis but which Defendants ignore. Mem. 1-4.

The notion that Voters must prove "an epidemic of voter fraud" or "widespread

---

[1] Plaintiffs Lamm et al. reply in support of Plaintiffs' Preliminary-Injunction Motion, ECF No. 2 (No. 20-67). Plaintiffs retain terms established in their Memorandum ("Mem."), ECF No. 3 (No. 20-67), e.g., "Voters," "Plan," "mail ballots," and "absentee ballots." Mem. 1 & nn. 1, 3.

[2] The League of Women Voters didn't file ECF No. 71 in No. 20-67. The Democratic entities' brief (ECF No. 76 (also filed as No. 74)) was but ignores Voters' unique arguments. The Secretary of State's brief (ECF No. 82) was spread here but addresses matters irrelevant to Voters. So Voters mainly respond to the Governor's opposition (ECF No. 81, herein "Opp'n").

**Prel. Inj. Reply of Pls. Lamm et al.**     1

voter fraud," *see, e.g.*, ECF No. 76 at 1, 2, 21, is a straw-man argument because it is enough that Voters established that as a matter of law (i) voter fraud is greater with mail balloting, Mem. 3-4, and (ii) the legislative balancing establishes the danger zone for vote fraud regarding both mailed ballots and the sudden flood of ballots, Mem. 15-18; *see also infra* I.B. In a close race even one fraudulent ballot can swing an election. And legislature's balance the *risk* and implement measures to mitigate that *risk* because such fraud typically goes undetected; otherwise simple penalties for fraud would suffice.

 The Governor stresses that "[c]ounties <u>must</u> permit voters an option to vote in-person at the county election office or other designated location through Election Day," Opp'n 5 (underscoring in original), so the state can and does do in-person voting that is presumably in full compliance with Phase 2 requirements. That means that Voters who prefer in-person voting can do so, though in-person Voters are subject to a substantial risk of vote-dilution disenfranchisement, Part I.B, just as absentee-ballot Voters are at a substantial risk of direct disenfrachisement, Part I.C. Voters nowhere argued that their right to vote was at risk because they could not vote. Opp'n 33.

**Prel. Inj. Reply of Pls. Lamm et al.**  2

## Standing

Here Voters address standing, immunity, and abstention.

Voters established their standing as voters, candidates, and a political party. Mem. 9-13. The Governor says the Elections Clause claim and voter-plaintiffs' right to vote and equal-protection claims are mere generalized grievances and that only the legislature would have standing. Opp'n 16-22. But that errs because voters, candidates, and political-party Plaintiffs assert their own rights to have and to vote in an election compliant with the Elections Clause and an individual can make a claim under the Elections Clause; Mem. 14-15; *see also infra* I.A (candidate claim recognized), which Defendants ignore. Voter plaintiffs' harm is not "mere speculation" as the Governor claims, Opp'n 20-21, but is based on the facts that (i) the Supreme Court in *Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181 (2008), recognized that mail voting poses a greater risk of fraud, which thus applies as a matter of law, Mem. 3-4, and (ii) the legislative balancing, Mem. 15-18; *see also infra* I.B., which Defendants ignore. An equal-protection claim based on disparate voting power provides standing for disadvantaged voters. Mem. 9, which Defendants ignore. And Voters established from controlling Supreme Court precedent that the voter-plaintiffs do not have a mere generalized grievance because their claim is at two levels of specificity beyond mere "citizens" just trying to make the

**Prel. Inj. Reply of Pls. Lamm et al.**      3

government do its job, Mem. 9-12, which Defendants ignore. The Governor says candidates and the political-party committee lack standing, Opp'n 22-23, but ignores that a candidate asserted the Electors Clause claim in *Bush v. Gore*, 531 U.S. 98 (2000), *see infra* I.A., and candidate's assertion that they risk losing votes and that the political-party committee has the same interests as other political-party committees. Mem. 12-13.

The Governor says sovereign immunity applies because Voters merely seek to force the government to do its job, Opp'n 25, but under the same authorities the Governor cites, Eleventh Amendment immunity doesn't apply because Voters assert personal constitutional rights, including under the Elections Clause which may in fact be asserted as a claim, as done by candidate Bush in *Bush*.

The Governor urges abstention, Opp'n 27, but abstention is improper here because Voters federal constitutional rights are urgently at risk and (inter alia), *even if* the Governor has statutory powers for an *emergency*, there is no emergency because the legislative balancing in place without the Plan was fully compliant with the Governor's own Phase 2 requirements, Mem. 1-3, and the burden of applying for an absentee ballot is noncognizable under the benchmark set in *Crawford*, 553 U.S. 181, Mem. 19-21. So there was no emergency to trigger emergency powers, just as there was no burden on the right to vote to justify the Plan.

**Prel. Inj. Reply of Pls. Lamm et al.**     4

# Argument

## I.

### Voters succeed on the merits.

Keeping in mind that (i) a substantial risk of harm to Voters' constitutional rights suffices for standing and (ii) that exists as a matter of law where the legislative balancing is altered resolves the issues in Voters' favor and refutes Defendants' arguments not specifically addressed here.

**A. The Plan violates the Elections Clause.**

Voters established that the Plan violates the Elections Clause. Mem. 14-15. Voters established that the Elections Clause provides a cause of action because the similarly worded Electors Clause was recognized as a permissible claim in *Bush*, 531 U.S. at 103. Mem. 15. Similarly, in *Bush v. Palm Beach County Canvassing Board*, 531 U.S. 70 (2000), the Court "granted certiorari on two of the questions presented by petitioner" (candidate Bush), including an Electors Clause claim, *id.* at 472. Moreover, in *Bush v. Gore*, three Supreme Court members *would* have reached the Electors Clause and employed it as part of "additional grounds to reverse the Florida Supreme Court's decision." *Id.* at 111(Rehnquist, CJ, joined by Scalia and Thomas, JJ.) "A significant departure from the legislative scheme for appointing Presidential electors *presents a federal constitutional question*." *Id.* at 113 (emphasis added). That italicized language by three members of the Court,

**Prel. Inj. Reply of Pls. Lamm et al.**     5

coupled with the majority's grant of certiorari specifically on a candidate's claim based on noncompliance with the Electors Clause indicates that there is a cause of action to enforce the Electors Clause, pursuable under 42 U.S.C. § 1983. The same analysis applies to the Elections Clause given the parallel language mandating that the legislature prescribe the manner of elections. So the Governor is simply wrong that only the legislature has standing to make this claim, dooming their third-party-standing argument. Opp'n 24-25.

**B.  The Plan violates the right to vote by imposing the substantial risk of *vote-dilution* disenfranchisement that the legislative balancing rejected.**

Voters established that the Plan violates the right to vote by *vote-dilution* disenfranchisement. Mem. 15-21. Crucially, though Defendants ignore it, Voters established that deviating from the legislature's access-integrity balance to favor access creates a cognizable risk to election integrity *as a matter of law* because *only* the legislature has authority and expertise to strike that balance. Mem. 15-18, 22. The legislative balance is expressed in state election laws and is that point between protecting access and integrity where the legislatures authoritatively *finds* those concerns safely balanced, as illustrated next for *this* election in *this* state regarding the fraud and sudden-flood risks and particularly mail ballots:

**Prel. Inj. Reply of Pls. Lamm et al.**     6

| *Safe Zone* | *Danger Zone* |
|---|---|
| • in-person voting (compliant with Phase 2)<br>• no-excuse-required, absentee-ballot voting | • mail ballots (banned) |

*Protect Access*     **Legislative Balance** ↑(safe point)     *Protect Integrity*

By sliding the balance point into the legislature's danger zone, i.e., expanding the protect-access zone and diminishing the protect-integrity zone, the Plan imposes a substantial risk of ballot fraud and sudden-ballot-flood that the legislature authoritatively and expertly found dangerous and rejected. So the Plan fails balancing under *Burdick*, 504 U.S. 428, because the legislatively recognized substantial risk of vote fraud imposed by the Plan must be balanced against the purported COVID-19 infection risk that is nonexistent because the legislative balance on in-person voting complies fully with the Governor's *own* Phase 2 reopening requirements, the burden of applying for an absentee ballot is non-cognizable under *Crawford*'s burden benchmark, and anyway there is no justification for the overbroad, facial-remedy Plan. Mem. 1-3, 15-21. Consequently, any notion that the Plan survives constitutional challenge because it makes it easier to vote, Opp'n 33, fails under the binding legislative balancing that balanced ease of access with integrity. The foregoing key analysis, which Defendants studiously ignore, refutes their arguments regarding this matter-of-law, substantial risk of disenfranchisement as well as the one discussed next. And the Governor's attempt to reframe this issue as whether "citi-

**Prel. Inj. Reply of Pls. Lamm et al.**     7

zens have a constitutional right to demand that their government enact prophylactic measures against fraud by third parties," Opp'n 33, not only ignores Voters' actual argument but is ironic because the *Governor* removed the legislature's prophylactic measures imposed in the legislative balancing when the legislature barred mail-ballot voting for this election.

### C. The Plan violates the right to vote by imposing the substantial risk of *direct* disenfranchisement the legislative balancing rejected.

Voters established that the Plan violates the right to vote by *direct* disenfranchisement. Mem. 22-23. The analysis closely tracks that in I.B. The sudden-flood substantial risk of direct disenfranchisement is cognizable as a matter of law because it is not what the legislative balancing found safe, and the *Burdick* balancing tracks that discussed in I.B. So the legislative balance that the Plan replaced already complied with *Burdick* as a legislature-justified, reasonable plan and Defendants cannot meet their burden to justify the Plan because in-person voting under Phase 2 requirements, coupled with no-excuse-required absentee ballots, imposed no cognizable burden on voters' rights under *Crawford*'s benchmark for cognizable burdens to even trigger *Burdick* balancing, and (even assuming a burden *arguendo*) the Plan was not tailored to voters with special needs, which were already met by absentee ballots.

**Prel. Inj. Reply of Pls. Lamm et al.**     8

### D. The Plan violates the right to vote and equal protection by empowering voters in some counties over others.

Voters established that the Plan violates the right to vote and equal protection by unequal voting empowerment. Mem. 23-25. Defendants actually contest standing for such a claim, Opp'n 18-24, though it is clearly established in the cases *Bush* cites, 531 U.S. at 107, as Voters already established. Mem. 9. The Governor says this claim is "meritless" because counties have varying voting schemes and all "use the same standards to assess whether a vote is legal." Opp'n 34-35. Defendants misunderstand *Bush* and the one-person-one-vote case line quoted and cited. 531 U.S. at 107-09. *Bush* and that case line hold that, though various systems are permitted, where a central authority authorizes different schemes that provide disparate voting power, voters in counties disadvantaged have standing to raise an equal-protection claim against the disparate treatment. Mem. 23-25. Here, the Governor has authorized such a disparate-power Plan that some but not all counties have adopted, and the Secretary has approved those disparate plans. So a central authority is indeed granting voters in some counties greater voting power, and voters in nonfavored counties may challenge that and the disparate treatment must be declared in violation of equal protection and the right to vote under the First and Fourteenth Amendment and enjoined.

**Prel. Inj. Reply of Pls. Lamm et al.**     9

## II.
### Equitable considerations don't preclude requested relief.

The Governor argues that the Purcell Principle, *Purcell v. Gonzalez*, 549 U.S. 1 (2006), and laches bar the requested relief. Opp'n 7-13. But the Plan was issued August 6 *allowing* a mail-ballot choice, and only on September 4 did counties actually have to *choose* mail-ballot voting plans, which were to be approved or disapproved in five days, i.e., by September 9. MCA 13-19-205. This case was filed on September 9. That is timely. As to the *Purcell* Principle, the Governor is the one recently altering the legislative balancing that provided an election plan compliant with his own Phase 2 requirements, and it is the Secretary who is recently approving plans pursuant to the Governor's Plan but inconsistent with the legislative balancing.

Moreover, plans may be amended "at any time prior to the 35th day before election day," *id.*, and rejected plans would ordinarily have to be resubmitted and approved, so state law has built-in flexibility based on the 60-day deadline for filing plans. The 35th day before November 3 is September 29. Up until that date, plans may be amended, so under the State's own election-law scheme election plans are flexible and subject to change. Plaintiffs should not be penalized for filing well before that date, and before September 29, this case will likely be resolved

**Prel. Inj. Reply of Pls. Lamm et al.**     10

in this Court.

Furthermore, Montana should not be able whipsaw those seeking to protect their constitutional rights by setting compliance deadline near an election, then making changes to the legislative balancing and claiming that no challenges may be made because it is near an election. Under the September 29 change deadline, any number of changes could be made that would violate constitutional rights and the State and its officials should not be heard to object that it's too late to challenge changes because the State set the deadline near the election.

This case was timely filed. It is Defendants who are recently changing the legislative balancing and approving what the legislature found to be in the danger zone. Since that violates Voters' constitutional rights, this Court has the authority to protect those constitutional and nothing prevents it from doing so now. Defendant need to be rather pursuing and promoting what is permissible, i.e., the in-person voting that they highlight is ongoing and will happen, along with the absentee ballots that are permitted.

# Conclusion

This Court should grant Voters final judgment and relief as follows:

1. Declare that the Plan violates Article I, § 4 , cl. 1;

2. Declare that the Plan violates the right to vote by vote-dilution disenfranchisement under the First and Fourteenth Amendments;

3. Declare that the Plan violates the right to vote by direct disenfranchisement under the First and Fourteenth Amendments;

4. Declare that the Plan violates the right to vote and equal protection under the Fourteenth Amendment, as interpreted by *Bush v. Gore*, 531 U.S. 98 (2000);

5. Issue a permanent injunction that prohibits Defendants from implementing and enforcing the Plan;

6. Issue a permanent injunction prohibiting the Secretary from approving county plan to conduct mail elections; and

7. Award Voters their costs and attorneys fees under 42 U.S.C. § 1988 and any other applicable authority.

| | |
|---|---|
| September 18, 2020 | Respectfully submitted, |

| | |
|---|---|
| /s/ James Bopp, Jr. | /s/ Emily Jones |
| James Bopp, Jr. (IN #2838-84)* | Emily Jones |
|   jboppjr@aol.com |   emily@joneslawmt.com |
| Richard E. Coleson (IN #11527-70)* | JONES LAW FIRM |
|   rcoleson@bopplaw.com | 2101 Broadwater Ave. |
| Courtney Turner Milbank (IN #32178-29) | P.O. Box 22537 |
|   cmilbank@bopplaw.com | Billings, MT 59104 |
| Angela Stuedemann (IA #69956) | Telephone: 406/384-7990 |
|   astuedemann@bopplaw.com | *Local Counsel for Plaintiffs* |
| True the Vote, Inc. | |
|   Voters' Rights Initiative | |
| THE BOPP LAW FIRM, PC | |
| 1 South Sixth St. | |
| Terre Haute, IN 47807-3510 | |
| Telephone: 812/232-2434 | |
| *Admitted pro hac vice | |
| *Lead Counsel for Plaintiffs* | |

## Certificate of Compliance

I certify that the foregoing document complies with this Court's Orders (Docs. 35 and 45 in Case No. 6:20-cv-00066-DLC), because it contains 2483 of the allowed 2,500 words according to the word processing program used, excluding portions excluded by local rule.

/s/ Emily Jones
Emily Jones
  emily@joneslawmt.com
JONES LAW FIRM
2101 Broadwater Ave.
P.O. Box 22537
Billings, MT 59104
Telephone: 406/384-7990
*Local Counsel for Plaintiffs*

## Certificate of Service

I hereby certify that I caused the foregoing document to be served on counsel of record on September 18, 2020, via the Court's ECF system.

/s/ Emily Jones
Emily Jones
  emily@joneslawmt.com
JONES LAW FIRM
2101 Broadwater Ave.
P.O. Box 22537
Billings, MT 59104
Telephone: 406/384-7990
*Local Counsel for Plaintiffs*

**Prel. Inj. Reply of Pls. Lamm et al.**    15