Emily Jones
  emily@joneslawmt.com
JONES LAW FIRM
2101 Broadwater Ave.
P.O. Box 22537
Billings, MT 59104
Telephone: 406/384-7990
*Local Counsel for Plaintiffs*

James Bopp, Jr. (IN #2838-84)
  jboppjr@aol.com*
Richard E. Coleson (IN #11527-70)
  rcoleson@bopplaw.com*
Courtney Turner Milbank (IN #32178-29)
  cmilbank@bopplaw.com*
Angela Stuedemann (IA #69956)
  astuedemann@bopplaw.com*
True the Vote, Inc., Voters' Rights Initiative
THE BOPP LAW FIRM, PC
1 South Sixth St.
Terre Haute, IN 47807-3510
Telephone: 812/232-2434
*Admitted pro hac vice
*Lead Counsel for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| **Joe Lamm** et al.,<br>　　　Plaintiffs,<br><br>　v.<br><br>**Stephen Bullock** et al.,<br>　　　Defendants. | Case No.: 6:20-cv-00067-DLC<br><br>**Brief Supporting Motion of Plaintiffs Lamm et al. for Expedited Injunction Pending Appeal** |

# Table of Contents

Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Expedition Request . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Legal Standard . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Standing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    I.    Voters are likely to succeed on the merits. . . . . . . . . . . . . . . . . . . . . . . 4
           A   Key analyses control this case as a matter of law. . . . . . . . . . . . . . . 4
           B.  Voters have stated claims for relief. . . . . . . . . . . . . . . . . . . . . . . . . . 8

    II.   Irreparable harm, public interest, and equitable factors warrant relief. . . 10

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Certificate of Compliance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Certificate of Service . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

# Introduction

As stated in the Motion of Plaintiffs Lamm et al. for Expedited Injunction Pending Appeal ("Motion" or "Mot."), Voters[1] have filed their Notice of Appeal and request an injunction pending appeal of this Court's denial of Voters' requested relief. Fed R. Civ. P. 62(d); Fed. R. App. P 8(a)(1).

# Expedition Request

Given the Plan's prescribed October 9 deadline for sending mail ballots in counties adopting the mail-ballot Plan (Plan[2] at 3), and the looming November 3 election, Voters also seek expedition of any responsive briefing, *see, e.g.*, *Annex Medical, Inc. v. Sebelius*, 2013 WL 203526, at *1 (D. Min. Jan. 17, 2013) (ordering such expedited briefing), and respectfully request a decision on this Motion by October 2, 2020. If this Court is disinclined to grant the Motion, Voters request that it do so without awaiting response briefing. Voters waive any reply.

---

[1] Plaintiffs Lamm et al. retain terms established in their Preliminary-Injunction Memorandum ("PI Mem."), ECF No. 3 in No. 20-67, e.g., "Voters," "Plan" (a.k.a. "Directive" or "Executive Directive" in briefing by other parties), "mail ballots," and "absentee ballots." PI Mem. 1 & nn. 1, 3.

[2] Gov. Bullock, *Directive implementing Executive Orders 2-2020 and 3-2020 and providing for measures to implement the 2020 November general election safely* (Aug. 6, 2020), https://covid19.mt.gov/Portals/223/Documents/2020-08-06_Directive%20-%20November%20Elections.pdf?ver=2020-08-06-112431-693.

## Legal Standard

Granting an injunction pending appeal turns on the same analysis as a preliminary-injunction motion, *see, e.g.*, *E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 769 (9th Cir. 2018). The Ninth Circuit uses a sliding-scale preliminary-injunction test:

> Plaintiffs ... must establish that: (1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in their favor; and (4) an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The Ninth Circuit weighs these factors on a sliding scale, such that where there are only "serious questions going to the merits"—that is, less than a "likelihood of success" on the merits—a preliminary injunction may still issue so long as "the balance of hardships tips *sharply* in the plaintiff's favor" and the other two factors are satisfied.

*Short v. Brown*, 893 F.3d 671, 675 (9th Cir. 2018) (citations omitted) (emphasis in original). "An allegation of future injury may suffice if ... there is a '"substantial risk' that the harm will occur." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (citation omitted). On the merits-success prong, "the burdens at the preliminary injunction stage track the burdens at trial." *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 429 (2006). "In deciding whether to grant an injunction pending appeal, the court balances the plaintiff's likelihood of success against the relative hardship to the parties." *Se. Alaska Conservation Coun-*

cil v. U.S. Army Corps of Engineers*, 472 F.3d 1097, 1100 (9th Cir. 2006) (citations omitted).

Of course, this Court consolidated the hearing on Voters' preliminary-injunction motion (ECF No. 2 in 20-67) with the hearing on the merits (ECF No. 45 in 20-66 (consolidation order)), and denied the injunctive relief they sought in their Complaint (ECF No. 1 in No. 20-67). Nonetheless, this Court may yet issue an injunction pending appeal, despite such denial of injunctive relief. *See, e.g.*, *Am. Beverage Ass'n v. City & Cty. of San Francisco*, No. 15-cv-03415-EMC, 2016 WL 9184999, at *2 (N.D. Cal. June 7, 2016). Even if this Court "believes it correctly decided the issues presented," it may yet grant an injunction pending appeal due to a "plausible argument that there are serious questions on the merits and irreparable injury," *id.*, which is the case here.

## Standing

The Court recognized Voters' standing.

## Argument

As the test for injunctions pending appeal is the same as for preliminary injunctions, Voters generally incorporate by reference the arguments in their preliminary-injunction memorandum (ECF No. 3 in No. 20-67; "PI Mem.") and their

preliminary-injunction reply (ECF No. 91 in No. 20-66; "PI Reply")). In addition, they show the Court as follows in support of an injunction pending appeal, which demonstrate a "plausible argument that there are serious questions on the merits and irreparable injury," *Am. Beverage Ass'n*, 2016 WL 9184999, at *2, warranting an injunction pending appeal.

# I.
**Voters are likely to succeed on the merits.**[3]

**A. Key analyses control this case as a matter of law.**

Key analyses control this case as a matter of law. They established that voters are likely to succeed on the merits and justify an injunction pending appeal because they reveal serious questions on the merits and irreparable injury.

First, there was *no emergency* to trigger any arguably applicable emergency powers asserted to justify the Plan. That is because "Montana's safe system of in-person, coupled with no-excuse *absentee ballot* voting for which there is *no cognizable burden on the right to vote to simply apply*, complies with the Governor's own Phase 2 reopening rules, obviating any justification for the Plan." PI Mem. 1;

---

[3] Voters incorporate here by reference the following portions of their opening brief: Introduction and Facts (PI Mem. 1-9); Standing (PI Mem. 9-13); Part I (PI Mem. 13-25), and Part II (PI Mem. 26). Voters also incorporate here by reference the following portions of their reply brief: Introduction and Facts (PI Reply 1-2); Standing (PI Reply 3-4); Part I (PI Reply 5-9) and Part II (PI Reply 10-11).

*see also id.* at 1-3 (Facts(A)). To put it another way, there was no emergency because applying for an absentee ballot is open to all and poses *no risk* of COVID-19 or *burden* on the right to vote. That fact controls the legal analysis: (**A**) the legislative balancing (existing law displaced by the Plan), posed *no* cognizable burden on anyone's right to vote to trigger balancing under *Burdick v. Takushi*, 504 U.S. 428 (1992), PI Mem. 19-21; (**B**) the Plan utterly failed tailoring under *Burdick* balancing (even assuming *arguendo* there were a burden on the right to vote) because the Plan was justified by no cognizable burden to balance under the burden benchmark established in *Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181 (2008), PI Mem. 21; and (**C**) the original legislative balancing (displaced by the Plan) *was* a reasonable regulation readily justified by the State's interest in protecting election integrity under *Burdick* balancing so there was no legal (let alone factual) basis for displacing the legislative balancing, Mem. 19-20.

Second, *Crawford*'s recognition that "mailed ballots pose the greater fraud risk," as compared to in-person voting, establishes *as a matter of law* that there is a cognizable risk of vote fraud with mailed ballots *that need not be proven*. PI Mem. 3-4. There is thus no speculation about that. And no argument about the existence or nonexistence of discovered vote fraud in Montana can displace this matter-of-

law fact and governmental interest, which in turn justifies the legislature's choice to expressly *ban* mail ballots for this election in this State in the *Burdick* balancing as just discussed. And the exclusion of mail ballots for this election was necessarily a result of the legislative balancing discussed next.

Third, the U.S. Constitution "confers on states broad authority to regulate the conduct of elections, including federal ones." *Griffin v. Roupas*, 385 F.3d 1128, 1130 (7th Cir. 2004) (citing U.S. Const. art I, § 4, cl.1). "[S]triking ... the balance between discouraging fraud and other abuses and encouraging turnout is quintessentially a *legislative* judgment . . . ." *Id.* at 1131 (emphasis added). There is no right to vote absentee and absentee ballots pose special fraud risks, so only the legislature has the authority and is equipped to balance access and integrity in the absentee-ballot context and also (in Montana) the mail-ballot context. *Id.* at 1130-31. PI Mem. 16. This legislative balancing cannot be gainsaid based on either what other states do or by the existence of other safeguards. PI Mem. 16-17. Because only the legislature has the authority and expertise to balance election access and election integrity, and because it must be presumed to be aware of the heightened risks of mailed ballots and the sudden flood of ballots, as a matter of law those risks were already considered in the legislative balancing that rejected mail ballots

for this election in Montana. PI Mem. 3-8, 17-18, 22; PI Reply 6-8. As explained in Voters' reply brief, the legislative balance is expressed in state election laws and is that point between protecting access and integrity where the legislatures authoritatively *finds* those concerns safely balanced, as illustrated next for *this* election in *this* state regarding the fraud and sudden-flood risks and particularly mail ballots:

| *Safe Zone*<br>• in-person voting (compliant with Phase 2)<br>• no-excuse-required, absentee-ballot voting | *Danger Zone*<br>• mail ballots (banned) |
|---|---|
| *Protect Access*   ***Legislative Balance*** ↑(safe point) | *Protect Integrity* |

By sliding the balance point into the legislature's danger zone, i.e., expanding the protect-access zone and diminishing the protect-integrity zone, the Plan imposes a substantial risk of ballot fraud and sudden-ballot-flood that the legislature authoritatively and expertly found dangerous and rejected. PI Reply 6-7.

Fourth, given the matter-of-law risks established by *Crawford* and the legislative balancing, coupled with the Plan's implementation of the mail-ballot plan that the legislative balancing expressly rejected, Voters have a matter-of-law substantial risk of harm, which suffices, *Susan B. Anthony List*, 573 U.S. at 158, to their right to vote from direct and vote-dilution. PI Mem. 8-9, 11-12, 15-18-19; PI Reply 8-9.

Fifth, where a central authority—here Defendants Governor and Secretary—imposes, approves, or allows a scheme that gives greater voting power to

voters in some counties than others, those in lesser empowered counties have well-recognized standing under the Equal Protection Clause of the Fourteenth Amendment to challenge the dilution of their right to vote and their unequal treatment. PI Mem. 23-25; PI Reply 9.

Sixth, though this Court relied heavily on the lack of evidence of vote fraud in Montana elections, the key safeguard of the *ban* on mail ballots in elections like this was essential to their *being* such a lack of such evidence. The very ban at issue *caused* that dearth of evidence. So removing that essential safeguard, coupled with the findings inherent in the legislative balancing of access and integrity on which that safeguard was founded, triggers a cognizable, substantial risk that there will be such election-integrity risks.

These foregoing analyses should have provided Voters requested relief. But at a minimum, they demonstrate a "plausible argument that there are serious questions on the merits and irreparable injury," *Am. Beverage Ass'n*, 2016 WL 9184999, at *2, warranting an injunction pending appeal.

## B. Voters have stated claims for relief.

Of Voters' four counts, Counts II-IV readily state claims for relief, given cognizable harms (which Voters establish above as a matter of law), as they are based

on well-recognized rights to vote and have equal protection that allow a cause of action for violation. Questions have been raised about whether the Elections Clause is just an authorizing statute for state legislatures or provides a cause of action for enforcement, but Voters have resolved that by establishing that the U.S. Supreme Court has twice granted certiorari on whether the parallel Electors Clause, U.S. Const. art. II, § 1, cl. 2, has been violated, which was asserted by a candidate, and that, coupled with the three-member concurring opinion in *Bush v. Gore*, 531 U.S. 98 (2000), readily establishes that a cause of action may be brought under the Electors and Elections Clauses. PI Mem. 15; PI Reply 5-6. Voters' arguments establish that there is a private cause of action that voters should be able to assert, *see, e.g.*, PI Reply 3-4, but at a minimum, they demonstrate a "plausible argument that there are serious questions on the merits and irreparable injury," *Am. Beverage Ass'n*, 2016 WL 9184999, at *2, warranting an injunction pending appeal.

## II.
**Irreparable harm, public interest, and equitable factors warrant relief.**[4]

In the briefing incorporated by reference, Voters already demonstrated that

---

[4] Voters incorporate by reference here, specifically, the Facts, the legislative-balancing analysis in Part I.B, the last paragraph of Part I.D, and Parts II and III of their opening brief (PI Mem. 1-9, 15-21, 25-27), and the Facts, the legislative-balancing analysis in Part I.B, and Part II of their reply (PI Reply 1-2, 6-8, 10-11).

**Br. Supporting Mot. of Lamm et al.**
**for Inj. Pending Appeal**          9

they have irreparable harm—as a matter of law—and that the public interest and balance of equities warranted injunctive relief. *See, e.g.*, PI Mem. 8-9, 26; PI Reply 1-2, 10-11. For the same reasons, an injunction pending appeal should be granted.

Voters call the Court's attention to the fact that there was no emergency to justify the Plan because the existing legislative mandate (based on the legislature's authoritative and expert legislative balancing) of in-person voting subject to Phase 2 restrictions, coupled with no-excuse absentee ballots for those not wishing to vote in person, was fully compliant with the Governor's own Phase 2 requirements and requesting an absentee ballot requires so little effort that it is a *noncognizable* burden, *see* PI Mem. 1-3, 19-20. Because COVID-19 concerns were already addressed and addressable under the legislature's prescribed manner, there was *no* public interest in mitigating COVID-19 risks and thus no harm to the right to vote to put on the balance to support the Plan opposite Voter's harms, i.e., (i and ii) substantial risks to their right to vote from vote-dilution and direct disenfranchisement, (iii) having votes diluted (for voters in non-Plan counties) by the enhanced voting power of voters in Plan counties, and (iv) not having and voting in an election done as the legislature prescribed—rather as the legislature banned.

Finally, Montana should not be able whipsaw those seeking to protect their

constitutional rights by setting compliance deadlines near an election, then altering the legislative balancing near an election, and then claiming that no challenges may be made because it is near an election.

## Conclusion

As shown, there is a "plausible argument that there are serious questions on the merits and irreparable injury," *Am. Beverage Ass'n*, 2016 WL 9184999, at *2, warranting an injunction pending appeal. The Court should issue an injunction pending appeal and temporarily enjoin Defendants for the pendency of their appeal to the Ninth Circuit. Specifically, this Court should issue an order

- (i) enjoining Defendants from implementing and enforcing the Plan (a.k.a. Executive Directive);
- (ii) enjoining the Secretary from approving county plans to conduct mail elections under the Plan; and
- (iii) requiring the Secretary to rescind approvals of plans to conduct elections under the Plan until Voters' appeal to the U.S. Court of Appeals for the Ninth Circuit is finally adjudicated.

September 30, 2020                         Respectfully submitted,

/s/ James Bopp, Jr.                        /s/ Emily Jones
James Bopp, Jr. (IN #2838-84)*             Emily Jones
  jboppjr@aol.com                              emily@joneslawmt.com
Richard E. Coleson (IN #11527-70)*         JONES LAW FIRM
  rcoleson@bopplaw.com                       2101 Broadwater Ave.
Courtney Turner Milbank (IN #32178-29)     P.O. Box 22537
  cmilbank@bopplaw.com                       Billings, MT 59104
Angela Stuedemann (IA #69956)              Telephone: 406/384-7990
  astuedemann@bopplaw.com                    *Local Counsel for Plaintiffs*
True the Vote, Inc.
  Voters' Rights Initiative
THE BOPP LAW FIRM, PC
1 South Sixth St.
Terre Haute, IN 47807-3510
Telephone: 812/232-2434
*Admitted pro hac vice
*Lead Counsel for Plaintiffs*

## Certificate of Compliance

I certify that the foregoing document complies with Local Rule 7.1(d)(2)(A) because it contains 2,445 of the 6,500 words allowed according to the word processing program used, excluding portions excluded by local rule.

/s/ Emily Jones
Emily Jones
  emily@joneslawmt.com
JONES LAW FIRM
2101 Broadwater Ave.
P.O. Box 22537
Billings, MT 59104
Telephone: 406/384-7990
*Local Counsel for Plaintiffs*

# Certificate of Service

I hereby certify that I caused the foregoing document to be served on counsel of record on September 30, 2020, via the Court's ECF system.

/s/ Emily Jones
Emily Jones
emily@joneslawmt.com
JONES LAW FIRM
2101 Broadwater Ave.
P.O. Box 22537
Billings, MT 59104
Telephone: 406/384-7990
*Local Counsel for Plaintiffs*
